UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MICHAEL DOUGLAS ANDRE

                                          CIVIL ACTION

VERSUS

                                          NUMBER 11-250-JJB-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


## NOTICE

      Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

      In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Baton Rouge, Louisiana, September 24, 2012.


                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL DOUGLAS ANDRE

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NUMBER 11-250-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Plaintiff Michael D. Andre brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security (Commissioner) that denied his claim for disability insurance benefits.

For the reasons which follow the Commissioner's decision should be affirmed.

## Background

Plaintiff Michael D. Andre was 51 years of age at the time of the hearing and decision, and age 40 at the date he was last insured for benefits. AR pp. 51, 291.[1] Plaintiff obtained his high school degree. AR pp, 74, 292-93. His past relevant work consisted of work as a surveyor, from approximately 1978 to 1991,

---

[1] Under the regulations, at the time of the hearing the plaintiff was in the category of "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). However, as of the date the plaintiff was last insured for disability benefits, the plaintiff was 40 years of age, which put him in the classification of "younger person." 20 C.F.R. § 404.1563(c).

and working for a plastics manufacturer from 1992 to 1993. AR pp. 70, 78, 293-95. Plaintiff submitted an initial application for disability benefits in July 2001 that was denied in December 2001. AR p. 40.

Plaintiff filed his second application in April 2007, claiming that he has been unable to work since May 1, 1995 because of disabling conditions, namely, degenerative disc and joint disease of the neck and back, with nerve damage and constant pain. AR pp. 51-64, 69. This second application for benefits was also denied, and the plaintiff requested a hearing before an administrative law judge (ALJ). The ALJ initially denied the request for a hearing on the ground of res judicata. However, the Appeals Council vacated the ALJ's order because after the denial of the plaintiff's first application for benefits, the evaluation of musculoskeletal impairments underwent changes that were effective February 19, 2002. In these circumstances the doctrine of res judicata could not be applied to the plaintiff's second application. Therefore, the Appeals Council remanded the case for the ALJ to offer the plaintiff an opportunity for a hearing. AR pp. 40-41.

The ALJ held a hearing on October 27, 2009 and issued an unfavorable decision on December 18, 2009. First, the ALJ evaluated the plaintiff's insured status. Review of the plaintiff's earnings record established that he was insured for disability benefits through December 31, 1998. Therefore, the

plaintiff had to establish disability on or before that date to be entitled to benefits.  AR pp. 17, 59-65.

By October 2009 the plaintiff had undergone three neck surgeries and one right shoulder arthroscopic surgery, which took place on October 7, 2003.  AR pp. 200, 211, 257.  However, as of his last insured date of December 31, 1998 the plaintiff's medical history consisted of one neck surgery, a diskectomy and fusion at C5-C6 which was performed by Dr. Steven M. Bailey in May 1995. There are no medical records of the actual surgery, but this was the date stated by plaintiff's representative and primary care doctor, Dr. Carl McLemore.[2]  AR pp. 98, 240.  Although the plaintiff, Dr. McLemore and the plaintiff's attorney at various times stated that the plaintiff underwent his second cervical fusion approximately six months later, the record establishes that these statements are not accurate.  AR pp. 240, 297, 307, 311.  Dr. Bailey performed the second surgery, a diskectomy and fusion at C6-C7, on June 2, 2000.  AR p. 264.  Plaintiff's last neck surgery was an anterior cervical diskectomy at C4-C5 performed by Dr. Horace Mitchell on September 13, 2001.  AR pp. 130, 260.

At the second step, the ALJ found that through the date he was

---

[2] The records reflect that the surgery may have been around July 1996.  AR pp. 156-66.  Noticeably, the report of the MRI of the cervical spine done on July 26, 1996 indicated a soft disc herniation to the right at C5-6, but did not note a fusion at that level.  AR p. 163.  Whether the surgery occurred in 1995 or 1996, it is clear that the surgery took place before December 31, 1998.

last insured,[3] the plaintiff had severe impairments consisting of status post cervical surgery, disorders of the cervical spine and the right shoulder.  AR p. 19.

Citing *Stone v. Heckler*,[4] the ALJ concluded that any problems the plaintiff alleged with regard to depression and his right hand were not severe.  AR pp. 19-20.  At step three the ALJ determined that the plaintiff's combination of severe impairments did not meet or medically equal one of the impairments listed in Appendix 1. Before proceeding to the fourth step the ALJ made his findings on the plaintiff's credibility and residual functional capacity (RFC).[5]  Based on his review of all the evidence the ALJ determined that the plaintiff had the residual functional capacity for a full range of light work, and that the plaintiff's statements about the intensity, persistence and limiting effects of his impairments were not credible to the extent they were inconsistent with this RFC.[6]

---

[3] Each of the ALJ's findings were as of the plaintiff's last insured date.  Since this date applies to all of the ALJ's findings, the date will not be repeated each time a finding is discussed.

[4] 752 F.2d 1099 (5th Cir. 1985).

[5] The RFC determination is used at the fourth step to determine whether the claimant can do his past relevant work, and at the fifth step to determine if the claimant can adjust to other work in the national economy.  20 C.F.R. § 404.1520(e).

[6] 20 CFR §404.1567(b) defines the physical exertion requirements of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
(continued...)

AR pp. 20-23. The exertional requirements of the plaintiff's past work exceeded the demands of light work. Therefore, the plaintiff was unable to do his previous jobs as a surveyor and plastics worker, and the ALJ was required to proceed to the final step of the disability analysis and consider whether the plaintiff was able to perform other work as defined by the regulations.[7]

The ALJ concluded that based on an RFC for a full range of light work, and considering the plaintiff's age, education and work experience, a finding of not disabled was directed by Rule 202.21 of the Medical-Vocational Guidelines.[8] AR pp. 23-24.

After the ALJ's decision the plaintiff sought review from the Appeals Council. The Appeals Council denied the plaintiff's

---

[6](...continued)
be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[7] 20 C.F.R. § 404.1566 provides as follows:
    (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether--
        (1) Work exists in the immediate area in which you live;
        (2) A specific job vacancy exists for you; or
        (3) You would be hired if you applied for work.

[8] 20 C.F.R. pt. 404, Subpt. P, App. 2, Table No. 2.

request for review and affirmed the ALJ's decision on February 24, 2011. Thus, the ALJ's findings constituted the final decision of the Commissioner. AR pp. 5-8. Plaintiff then filed this petition for judicial review challenging the Commissioner's determination that he is not disabled as of his last insured date, December 31, 1998.

## Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the

decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2)

the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

At step three, listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant

must then show that he or she cannot in fact perform that work.
*Boyd*, 239 F.3d at 705.

## Analysis

Plaintiff argued that the ALJ made four errors which require reversal and remand for a proper evaluation of the plaintiff's claim for disability benefits:

(1) The ALJ did not comply with 20 C.F.R. Section 404.1527(d) and Social Security Ruling 96-6p; he improperly rejected the restrictions assessed by the plaintiff's treating physician without good cause.

(2) The ALJ did not discuss why the plaintiff did not meet the requirements of Listing 1.04, 20 C. F. R. Part 404, Subpart P, Appendix 1.

(3) Plaintiff's allegations were improperly rejected without the assessment of the his credibility, which is required by the regulations.

(4) The ALJ's failure to recognize that the record established restrictions beyond those adopted in his RFC finding resulted in reliance on Rule 202.21 of the Medical Vocational Guidelines, which does not carry the Commissioner's burden of proof at the final step in the sequential evaluation process.[9]

Careful review of the administrative record as a whole demonstrates that the plaintiff's claims of reversible error are without merit and that substantial evidence supports the final decision that the plaintiff was not disabled as of December 31, 1997.

---

[9] Record document number 12, Plaintiff Memorandum in Support of Appeal, p. 1, Statement of Errors.

**1. The ALJ did not reject the opinions of the plaintiff's treating physician without good cause.**

Plaintiff's argument, that the ALJ improperly rejected Dr. McLemore's opinions without good cause, focused on Dr. McLemore's letter dated November 3, 2009.[10] AR pp. 240-41. Plaintiff acknowledged that the ALJ offered a rationale for rejecting Dr. McLemore's opinions, but argued that the ALJ did not clarify how he weighted the evidence or consider each of the factors required by the regulations. Moreover, the plaintiff argued that the ALJ's reasons for not accepting Dr. McLemore's opinions were flawed and do not reflect good cause for rejecting them.

Neither the record nor the case law supports the plaintiff's argument. The ALJ's explanation essentially covered the *Newton* factors.[11] The ALJ gave an extensive explanation of his reasons for not finding Dr. McLemore's report and opinions credible. For example, the ALJ noted Dr. McLemore's statement/opinion that the plaintiff "for the past seventeen years at best would have been capable of some sort of very light work where he would be allowed

---

[10] This letter was dated almost ten years after the plaintiff's date last insured for disability benefits.

[11] The factors are length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician. *Newton*, 209 F.3d at 456. To the extent the ALJ may have omitted discussion of a particular factor, the plaintiff did not specify which factor the ALJ failed to consider, or how he was prejudiced as a result.

to alternate, at will, between periods of sitting, standing or walking but even then was and continues to be capable of no more than a significantly part time of fifteen hours a week." AR pp. 22, 241. The ALJ explained that this opinion was not consistent with other evidence in the record which showed that seventeen years ago, in 1992 and 1993,[12] the plaintiff was performing full-time heavy exertional work for a plastics manufacturer. The ALJ also noted the plaintiff's statement in his disability application, which indicated that he did not stop working there in 1993 because of his impairments, but to take care of his children. AR pp. 22, 69.

Dr. McLemore stated that as early as August 1992 the plaintiff had little if any use of his right upper extremity, and use of it for either gross or fine manipulation caused excruciating pain. Again, the ALJ explained that this statement by Dr. McLemore was inconsistent with the plaintiff's work record in 1992-93,[13] and also

_____

[12] This would be the 17 years preceding Dr. McLemore's November 2009 letter.

[13] Plaintiff implied that because of the apparent conflict between his earnings record and Dr. McLemore's statements, under 20 C.F.R. § 404.1512(e) the ALJ should have recontacted Dr. McLemore. This argument is also unsupported. The ALJ is only required to develop the record further by contacting a treating physician, when their evidence is inadequate to determine whether the claimant is disabled, and there is insufficient objective and opinion evidence in the record from treating and other sources. Furthermore, even if the ALJ erred by not recontacting Dr. McLemore, the plaintiff did not offer anything to establish that he was prejudiced by this alleged error. He offered no argument or evidence that additional
(continued...)

inconsistent with other evidence showing the plaintiff engaged in activities in 1996 such as loading a three wheeler onto a truck. AR p. 22.

Finally, the ALJ discussed Dr. McLemore's statements that between his neck surgeries the plaintiff developed disc bulges in his thoracic and lumbar spine. The ALJ noted that the only diagnostic tests on these conditions were done after December 1998, and even those performed in 1999, and 2001, 2003 and 2005 showed only minimal or slight disc bulges without evidence of herniation, stenosis or significant impingement. AR pp. 22-23, 154, 173, 185.

It is well established that a treating physician's opinions are not conclusive, and may be assigned little or no weight when good cause is shown. Good cause may permit the ALJ to discount the weight of a treating doctor where his evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56. These are exactly the type of reasons

---

[13](...continued)
information or records from Dr. McLemore would have had an effect on the decision or that such information or records even exist. *See*, *Jones v. Astrue*, ___ F.3d ____, 2012 WL 3553622 (5th Cir. Aug. 20, 2012).

Effective March 2012, the regulation containing the subsection on recontacting medical sources, 20 C.F.R § 404.1512, was amended to eliminate this rule from the regulation. Therefore, the current regulation no longer contains paragraph (e) "Recontacting medical sources." The purpose of the change was to give adjudicators more flexibility in determining how to best obtain information, with the goal of making disability determinations more quickly and efficiently. 77 FR 10651-01, 2011 WL 7404303 (F.R. Feb. 23, 2012).

given by the ALJ in this case, and these reasons are supported by substantial evidence. The above analysis demonstrates that the plaintiff's argument that the ALJ improperly rejected Dr. McLemore's opinions is without merit, and equally demonstrates that the ALJ had good cause for not giving weight to his report.[14]

> **2. The ALJ's analysis at step three does not require reversal and remand of the plaintiff's claim for disability benefits.**

The Commissioner acknowledged that the ALJ should have engaged in a more extensive analysis at step three, but argued that this is not a basis to reverse the final decision because the plaintiff has not shown, and the record does not establish, the medical findings required to satisfy Listing 1.04.[15] Plaintiff argued that the ALJ

---

[14] In the context of this first claim of error, the plaintiff also argued that the ALJ improperly denied his request for a medical expert to infer/determine the onset date of his disability. This argument is also unsupported. Social Security Ruling 83-20, 1983 WL 31249, provides the framework for the ALJ to determine the onset date of disability. If the ALJ finds that a claimant is not disabled, no inquiry into an onset date is required. *See*, *Nix v. Barnhart*, 160 Fed.Appx. 393 (5th Cir. 2005)(where ALJ determined claimant was not disabled at any time on or before the date his disability insured status expired, no inquiry into an onset date, or use of medical expert was required).

[15] The relevant portion of Listing 1.04 is as follows:
> Listing 1.04 - *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>> A. Evidence of nerve root compression
>> (continued...)

13

committed reversible error by failing to properly analyze whether his impairments meet the requirements of Listing 1.04, and the ALJ's lack of explanation for rejecting evidence which showed his condition satisfied the listing warrants reversal and remand.

In the case relied on by the plaintiff, *Audler v. Astrue*,[16] the Fifth Circuit held that although an ALJ is not always required to do an exhaustive point-by-point discussion of the evidence supporting his finding at the third step, it is error for an ALJ to offer nothing to support his conclusion. Nevertheless, the court stated that having determined error on this ground, the court must still consider whether the error was harmless.[17] *Audler*, 501 F.3d at 448.[18]

The ALJ in this case did give a reason for his adverse determination at step three, but as the Commissioner acknowledged,

---

[15](...continued)
characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ...

[16] 501 F.3d 446, 448 (5th Cir. 2007).

[17] "Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

[18] In *Audler* the court found that the error was not harmless because the record contained uncontradicted evidence that the claimant met the listing requirements. *Audler*, 501 F.3d at 449.

the ALJ did not discuss any of the evidence. Nevertheless, the plaintiff has not demonstrated that reversal and remand is warranted because of the ALJ's error.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect, and each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. *Sullivan v. Zebley*, *supra*. Rather than citing to the portions of the record which establish that he has the medical signs, symptoms and tests results needed to meet Listing 1.04A, the plaintiff merely made conclusory statements that the record evidence shows that he satisfies the requirements.[19] Since the plaintiff failed to show that the record includes the evidence demonstrating he can meet his burden at the third step, the ALJ's neglect to set out a detailed basis for his finding did not affect the plaintiff's substantial rights, and therefore is a harmless error.[20]

---

[19] Record document number 12, p. 9; record document number 15, Plaintiff Reply to the Defendant's Opposition, p. 7.

[20] *See Audler*, 501 F.3d at 449; *Garcia v. Astrue*, 2012 WL 13716 (S.D.Tex. Jan. 3, 2012); *Smith v. Astrue*, 2012 WL 3779146 (E.D.La. Aug. 13, 2012)(where record did not demonstrate plaintiff could meet burden of demonstrating that listing requirements were satisfied, ALJ's failure to set out a sufficient basis for his decision at step three is harmless error).

**3.    The ALJ properly evaluated the plaintiff's credibility
and he sufficiently explained the reasons for his
finding, which was supported by substantial evidence.**

The ALJ must consider a claimant's subjective complaints, but
may find that those complaints are not credible or are exaggerated
in light of the objective medical and other evidence of record,
such as daily activities and medications.  The ALJ is not required
to give subjective evidence precedence over objective evidence.
*Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992);
*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v.
Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The record as a whole demonstrates that the ALJ correctly
applied these principles and his finding was supported by
substantial evidence.

Contrary to the plaintiff's arguments, the ALJ did not wholly
reject the plaintiff's subjective complaints and did not merely
make a conclusory determination of the plaintiff's credibility.
The ALJ acknowledged that as of the date the plaintiff was last
insured for benefits, December 31, 1998, the plaintiff had
medically established impairments that could reasonably be expected
to cause the symptoms he was experiencing.  Yet, considering all
the evidence the ALJ concluded that the plaintiff's statements
about the intensity, persistence and limiting effects of his
impairments were credible only to the extent consistent with a
residual capacity for light work.  AR p. 20.  The ALJ then engaged

in an analysis and comparison of the medical tests performed before and after the plaintiff's date last insured, the records of the plaintiff's treatment and surgeries for his neck and shoulder impairments, Dr. McLemore's records and report, and the testimony taken at the hearing. AR pp. 21-23. The evidence cited and discussed by the ALJ constitutes substantial evidence to support the ALJ's finding that the plaintiff's subjective complaints were not entirely credible.

### 4. The ALJ did not improperly rely on the Medical-Vocational Guidelines at the fifth step of the disability analysis.

Plaintiff argued that because he had nonexertional impairments the ALJ was required to obtain vocational expert testimony to support his finding at the fifth step.[21] It is unclear from the plaintiff's arguments whether he is claiming the ALJ should have found nonexertional limitations related to his right upper extremity or problems with his hands. In any event, as of December 31, 1998, there is no objective medical or other evidence to support the argument that the plaintiff's impairments caused nonexertional limitations.

In support of his argument, the plaintiff pointed to the ALJ's finding that his right shoulder impairment was severe, and Dr. McLemore's statement that he had limited use of the right upper

---

[21] *See Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *Fields v. Bowen*, 805 F.2d 1168, 1170 (Cir. 1986).

extremity. Plaintiff's argument is unpersuasive. First, the plaintiff asserted that the ALJ's finding of severe impairments of the cervical spine and right shoulder necessarily reflected a nonexertional impairment. Yet, the plaintiff failed to cite any legal or factual basis to support his assertion. Under the regulations it is clear that the existence of a severe impairment does not automatically establish its effects/limitations on a claimants ability to perform work-related activities, i.e., the exertional and nonexertional demands of jobs.[22] Therefore, the fact that the ALJ concluded that a disorder of the right shoulder was one of the plaintiff's severe impairments does not automatically mean this caused nonexertional limitations, which would have required the ALJ to obtain expert vocational testimony.[23]

Second, the plaintiff did testify at the hearing that before 1998 he had trouble using his hands. Dr. McLemore also stated in

---

[22] See 20 C.F.R. § 404.1545(impairments and related symptoms such as pain may cause physical or mental limitations that affect what you can do in a work setting; RFC is the most you can still do despite your limitations); 20 C.F.R. § 404.1569a(impairments and related symptoms such as pain may cause limitation of function or restrictions which limit ability to meet certain demands of jobs; limitations may be exertional, nonexertional or a combination of both).

[23] If the claimant suffered solely from a severe mental impairment, this type of nonexertional impairment would require the ALJ to obtain vocational testimony to establish the existence of other work. *See Fields v. Bowen*, *supra*. These circumstances do not exist here. The ALJ determined that the plaintiff's alleged mental impairment was not severe under the standard of *Stone v. Heckler*. AR pp. 19-20. Plaintiff did not contest this finding.

his 2009 report that the plaintiff had excruciating pain and limited use of his right upper extremity/right arm as early as August 1992. However, the ALJ found, and the record substantiated his finding, that the medical and other evidence did not support these statements.

Again, the record showed that from 1992-93 the plaintiff worked for a plastics manufacturer. Plaintiff reported that in this job he had to stand for 12 hours and sometimes do very heavy lifting. AR pp. 79-80, 295-96. Plaintiff had one neck surgery prior to December 31, 1998. Subsequent medical records consistently stated that the plaintiff did well after this surgery, had complete relief, and/or tremendously decreased symptoms. AR pp. 248, 264, 269. As noted by the ALJ, the plaintiff's report of his daily activities was also inconsistent with his claim of disabling pain and limitations during the relevant time period (May 1, 1995 through December 31, 1998). Plaintiff testified that he was able to do light exercise and household chores. AR pp. 302-04. The ALJ noted that the plaintiff loaded a three wheeler into a truck in July 1996. AR pp. 22, 166. The medical records also indicated that after 1998 the plaintiff was engaging in climbing activities. AR pp. 123, 190.[24]

Therefore, based on his determination of the plaintiff's RFC

_____

[24] Plaintiff fell from a deer stand in May 2003 and from a ladder in May 2004.

for light work, along with the plaintiff's age, education and work experience, the ALJ properly relied on Medical-Vocational Rule 202.21. This rule constitutes substantial evidence to support the ALJ's finding that the plaintiff was not disabled as of December 31, 1998.[25]

## Conclusion

The record as a whole demonstrates that the ALJ applied the correct legal standards, his findings are supported by substantial evidence, and any error was harmless. Plaintiff failed to establish a legal or factual basis for reversal of the ALJ's decision.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the final decision of Michael J. Astrue, Commissioner of Social Security denying the claim of Michael Douglas Andre for disability benefits be affirmed and this action be dismissed.

Baton Rouge, Louisiana, September 24, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[25] When the claimant suffers only from exertional impairments, or his nonexertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Medical-Vocational Guidelines in determining whether there is other work available in the national economy that the claimant can perform. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Loza v. Apfel*, 219 F.3d 378, 398 (5th Cir. 2000).